UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RUBEN CONTRERAS MACHUCA, d/b/a CENTENNIAL BAR AND GRILL a/k/a CENTENIAL RANCH SPORTS BAR AND GRILL, et al.,<br><br>Defendants. | No. 2:13-cv-1076 JAM KJN<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Presently before the court is plaintiff J & J Sports Productions, Inc.'s ("plaintiff") motion for default judgment against defendant Ruben Contreras Machuca and Silvia Ochoa Gomez, (collectively "defendants"), both individually and doing business as Centennial Bar and Grill a/k/a Centenial Ranch Sports Bar and Grill.[1]  Pursuant to the court's minute order issued on March 21, 2014, plaintiff's motion for default judgment was taken under submission on the papers and without oral argument.

For the reasons stated below, the undersigned recommends that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's favor, and that plaintiff be awarded a total of $3,700 in statutory and compensatory damages.

---

[1] This motion was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

I.  BACKGROUND

Plaintiff initiated this action on May 30, 2013, alleging claims under 47 U.S.C. section 605, *et seq.*, 47 U.S.C. section 553, *et seq.*, and California Business and Professions Code section 17200, *et seq.*, in addition to a state law tort claim for conversion. (See generally Compl., ECF No. 1.) Defendants are the owners, or operators, or licensees, or permittees, or persons in charge, or persons with control over the commercial establishment doing business as Centennial Bar and Grill a/k/a Centenial Ranch Sports Bar and Grill ("Centennial Bar"), which is located at 10408 Franklin Boulevard, in Elk Grove, California. (Compl. ¶¶ 6-7.) Plaintiff was granted by contract "the exclusive nationwide commercial distribution (closed-circuit) rights to *Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program*, telecast nationwide on Saturday, June 9, 2012" ("Plaintiff's Program"), which included the distribution rights to "all under-card bouts and fight commentary encompassed in the television broadcast of the event." (Id. at ¶18.)

Plaintiff alleges in its complaint that on June 9, 2012, defendants either specifically directed the employees of Centennial Bar "to unlawfully intercept and broadcast Plaintiff's Program" at Centennial Bar or were directly responsible for the actions of Centennial Bar's employees "by virtue of their acknowledged responsibility for the actions of Centennial Bar." (Id. at ¶15.) Plaintiff further alleges that "the unlawful broadcast of Plaintiff's Program, as supervised and/or authorized by Defendants . . . resulted in increased profits for Centennial Bar." (Id. at ¶16.)

In its complaint, plaintiff requests statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605 and for recovery of all costs and reasonable attorneys' fees. (Id. at 10.) Plaintiff prays for statutory damages of $60,000 for the willful violation of 47 U.S.C. § 553 and for recovery of all costs and reasonable attorneys' fees. (Id.) Plaintiff also seeks compensatory and punitive damages, reasonable attorneys' fees, and costs of suit for defendants' tortious conversion of Plaintiff's Program. (Id. at 11.) Finally, plaintiff seeks restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit for defendant's violation of the California Business & Professions Code. (Id.)

2

Plaintiff's complaint and summons were served upon defendant Machuca on July 23, 2013, by personal service at defendant's address. (ECF No. 5.) Plaintiff's complaint and summons were served upon defendant Gomez on August 5, 2013, by substituted service at defendant's place of business. (ECF No. 6.)

On August 20, 2013, plaintiff filed a request for entry of default against defendant Machuca. (ECF No. 7.) On August 21, 2013, the Clerk of Court entered defendant Machuca's default. (ECF No. 8.) On September 23, 2013, plaintiff filed a request for entry of default against defendant Ochoa. (ECF No. 11.) On September 24, 2013, the Clerk of Court entered defendant Ochoa's default. (ECF No. 12.)

On September 10, 2013, plaintiff filed a motion for default judgment as to defendant Machuca. (ECF No. 9.) The court denied plaintiff's motion without prejudice to its renewal on October 17, 2013, stating that the motion failed to identify whether it was intended to target all named defendants. (ECF No. 13.) On February 5, 2014, plaintiff filed a new motion for default judgment, seeking default judgment as to both defendants named in the complaint. (ECF No. 14.) Despite being served with process and all papers filed in connection with plaintiff's requests for entry of default and motions for default judgment, defendants failed to respond to plaintiff's complaint, plaintiff's requests for entry of default, or plaintiff's motions for default judgment.

II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

> stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

III. DISCUSSION

A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

For the reasons stated below, the undersigned finds that the material allegations of the complaint support plaintiff's request for entry of default judgment under the Eitel factors.

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor

4

favors the entry of a default judgment.

### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

#### a. Liability under 47 U.S.C. § 605

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. See 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a). Section 553(a) states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

////

     Here, plaintiff has not alleged whether the transmission that defendant intercepted was from a cable system or a satellite television signal. A split of authority has developed regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system. Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more") (internal quotation marks omitted).

     At a minimum, plaintiff's complaint and evidence support a conclusion that defendants intercepted, without authorization, a transmission of Plaintiff's Program and broadcasted it to their patrons. Plaintiff has supplied proof of defendants' violation through an affidavit of a private investigator that entered defendants' establishment on June 6, 2012, and viewed Plaintiff's Program. (Aff. of Perry Anderson ("Investigator Aff."), ECF No. 14-3.) The investigator's affidavit provides evidence that Plaintiff's Program was displayed on at least one of the four televisions he observed after entering the Centennial Bar and provides details of the portions of the program that he viewed. (Investigator Aff. at 2 (noting the names, attire, and actions of fight participants, what the fight announcer was discussing, a description of the bartender, the number of televisions, and other distinguishing features of the establishment)). Accordingly, plaintiff establishes that defendants have violated the gravamen of 47 U.S.C. § 605.

     However, plaintiff essentially concedes in its motion that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. (ECF No. 14-1 at 8.) Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable

6

system or satellite broadcast), it should not be prejudiced for its inability to do so because defendants have caused their own default by failing to answer the complaint or otherwise respond in this case. (Id.) The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice. In any event, the split of authority presented above has little practical impact in this case because the undersigned will recommend the entry of a judgment for statutory damages in the amount of $1,500, which is towards the lower-end of the non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II).[2] Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

### b. Conversion

The Ninth Circuit Court of Appeals has held that a claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (9th Cir. 1992). Since plaintiff purchased the licensing rights to the program at issue, defendants aired the program without plaintiff's permission, and plaintiff alleges that it suffered damages as a result of this airing, these three elements are met. Therefore, the second and third Eitel factors favor the entry of a default judgment with respect to plaintiff's conversion claim.

////

---

[2] Some courts have held that a defendant cannot be held liable under both 47 U.S.C. § 605(a) and 47 U.S.C. § 553. Kingvision Pay Per View, Ltd., v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065 at *3 (N.D. Cal. Feb. 19, 2010); J & J Sports Productions, Inc. v. Prado, 2008 WL 822159 at *3 (E.D. Cal. Mar. 27, 2008). However, the court need not reach the issue in this case because plaintiff seeks default judgment and statutory damages only with respect to its claim under 47 U.S.C. § 605, and not its claim under 47 U.S.C. § 553. Accordingly, the court's award of statutory damages will be under 47 U.S.C. § 605.

1    Accordingly, the second and third <u>Eitel</u> factors favor the entry of a default judgment with
2  regard to the claims plaintiff seeks relief under.[3]

### 3.  Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1176-77; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  By its motion for default judgment, plaintiff seeks a judgment in the total amount of $112,200 against the defaulted defendants.  That sum consists of $110,000 for violation of 47 U.S.C. § 605(c)(ii) and (e)(3)(B)(iii) and $2,200 for the tort of conversion.[4]

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment.  <u>See, e.g.</u>, <u>Joe Hand Promotions v. Streshly</u>, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); <u>J & J Sports Productions. v. Cardoze</u>, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); <u>see also</u> <u>Board of Trustees of the Sheet Metal Workers v. Vigil</u>, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of

---

[3] In its complaint, plaintiff also alleges claims under 47 U.S.C. §§ 553, *et seq.* and California Business and Professions Code §§ 17200 *et seq.*.  However, plaintiff's counsel states in his declaration in support of plaintiff's motion for default judgment that "[p]laintiff seeks relief on only two (2) of the four (4) causes of action" alleged in the complaint.  (Decl. of Thomas Riley, ECF No. 14-2, at ¶6.)  The two causes of action plaintiff seeks judgment and an award of damages for are its claim under 47 U.S.C. § 605 and state law conversion claim.  (<u>Id.</u> at ¶7.)  Accordingly, the court need not and will not consider plaintiff's claims under 47 U.S.C. § 553 and California Business and Professions Code § 17200.

[4] In its complaint, plaintiff also requests attorneys' fees and costs in connection with its claim under 47 U.S.C. § 605 and punitive damages as well as attorneys' fees and costs in connection with its conversion claim.  (Compl. at 10-11.)  However, plaintiff states in its motion for default judgment that it is only seeking statutory damages under 47 U.S.C. § 605 and compensatory damages in connection with its claim for conversion.  Furthermore, the declaration of plaintiff's counsel in support of plaintiff's motion for default judgment includes an itemized calculation of the requested judgment and does not mention attorney's fees and costs or punitive damages in connection with either of the claims plaintiff seeks to reduce to judgment.  (<u>See</u> Decl. of Thomas Riley, ECF No. 14-2, at ¶7.)  Moreover, no evidence of costs or attorneys' fees incurred was submitted to the court in connection with the pending motion. Accordingly, the court will not recommend the award of costs and attorneys' fees or punitive damages.

money involved."); but see J & J Sports Productions v. Hernandez, 2010 WL 1980186, at *4 ("[T]he statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). As discussed below, however, the court declines to recommend judgment in the amount requested. Consequently, the fourth Eitel factor does not weigh against plaintiff.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations and documentation supporting its claims. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the undersigned concludes that the fifth factor favors a default judgment.

### 5. Factor Six: Whether Default was Due to Excusable Neglect

"The sixth Eitel factor considers the possibility that the default resulted from excusable neglect." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, defendants were properly served with plaintiff's pleadings as well as with plaintiff's request for entry of default, motion for default judgment, and renewed motion for default judgment. Thus, defendants have had ample notice of plaintiff's intent to pursue a default judgment against them, yet they have not once filed anything in response to plaintiff's filings or otherwise made an appearance in this case. Accordingly, there is no indication that defendants' default resulted from excusable neglect.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendants, and recommends that such a default judgment be entered.  All that remains is the determination of the relief to which plaintiff is entitled.

### B. Terms of the Judgment to be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  As stated above, plaintiff requests a judgment in the total amount of $112,200 against the defaulted defendants; $110,000 for violation of 47 U.S.C. § 605(c)(ii) and (e)(3)(B)(iii) and $2,200 for the tort of conversion.  The undersigned is aware that defendants were served with plaintiff's motion for default judgment and were placed on notice of the amount sought by plaintiff.   However, one of the factors the court is free to consider in exercising its discretion in granting default judgment is the sum of money to be awarded.  See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605 (E.D. Cal. Dec. 12, 2011); J & J Sports Productions, Inc. v. Betancourt, 2009 WL 3416431 at *3 (S.D. Cal. Oct. 20, 2009). Considering plaintiff's briefing and the record in this case, the undersigned will recommend that damages be awarded but not in the amount requested.

#### 1. Damages Under 47 U.S.C. § 605

Under the Federal Communications Act, a plaintiff may elect to seek either actual or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I & II).  The statute provides for statutory damages for each violation of not less than $1,000 and not more than $10,000, as the court considers just.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Plaintiff seeks the maximum award of $10,000. The statute also authorizes enhanced damages of not more than $100,000 if the court finds the violation was "committed willfully and for purpose of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).  Here, plaintiff seeks the maximum of

1  $100,000 in enhanced statutory damages.  In support of this request plaintiff argues that the
2  requested amount is justified primarily because of the need to deter broadcast piracy in light of
3  the harm done to plaintiff's business as a result of such activities.  The court finds plaintiff's
4  argument in this regard to be unpersuasive in light of the record before the court and not
5  supported by the weight of authority in this area.

6  In this case, plaintiff's investigator stated that during the roughly twenty-minute period he
7  was present in the Centennial Bar, he observed only seven to a high of twelve persons inside the
8  establishment, which had the capacity to hold 50 persons.  (Investigator Aff. at 2.)  The
9  investigator reported that there was no cover charge for entry on the night in question.  (Id.)
10 Furthermore, there is no evidence before the court of any promotion by defendants that the fight
11 would be shown at the establishment.  (Id.)  There is also no evidence before the court that a
12 special premium on food and drink was being charged at the establishment on the night of the
13 fight.  (Id.)  Moreover, the investigator stated that the establishment had only four, twenty-five
14 inch television sets, two of which were mounted in the bar area, and the other two located in the
15 outside sitting area.  (Id.)  The investigator further admitted that he was only able to identify that
16 Plaintiff's Program was airing on of the one of the televisions behind the bar; he does not verify
17 that he observed the fight airing on the other televisions.  (Id.)  There is also no evidence that the
18 establishment was doing any greater level of business on the night Plaintiff's Program was shown
19 than at any other time.   Finally, plaintiff has presented no evidence to the court suggesting that, at
20 the time this action was filed, defendant was a repeat broadcast piracy offender.[5]

21 In light of this record, which lacks any evidence of defendants reaping any significant
22 commercial advantage or private financial gain from its piracy of Plaintiff's Program, the
23 undersigned recommends that plaintiff be awarded $1,500 in statutory damages pursuant to 47
24 U.S.C. § 605(e)(3)(C)(i)(II), but no enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

---

[5] Plaintiff's counsel has submitted a supplemental declaration stating that, after this action was commenced, a second piracy action was brought against defendants. (ECF No. 14-4.)  That second action is also currently pending before the undersigned. See Joe Hand Promotions, Inc. v. Machuca, et al., No. 2:13-cv-1228 GEB KJN.  The undersigned has taken into account defendants' repeated piracy activity in computing the appropriate award of damages in that case.

See J & J Sports Productions, Inc. v. Aranda, 2013 WL 1982974 at *3-4 (E.D. Cal. May 13, 2013) (awarding $1,000 in statutory damages and denying request for enhanced statutory damages); J & J Sports Productions, Inc. v. Jurado, 2011 WL 6153605 at *4 (E.D. Cal. Dec. 21, 2011) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for a total award of $4,000 in a default judgment under similar circumstances to those presented here, but where plaintiff provided evidence that roughly four times as many patrons were present at defendant's establishment during the pirated airing of plaintiff's program as were present in the current case); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065 at *3-4 (N.D. Cal. Feb. 19, 2010) (awarding $250 in statutory damages and denying request for enhanced statutory damages in light of the lack of evidence that the violation was egregious); Kingvision Pay Per View, Ltd., v. Backman, 102 F. Supp. 2d 1196, 1199 (N.D. Cal. 2000) (awarding statutory damages of $1,000 with no enhanced damages under circumstances similar to those here).

### 2. Damages for Conversion

Plaintiff's motion for default judgment also seeks an award of $2,200 in damages for the state law tort of conversion. In moving for default judgment plaintiff has submitted evidence, in the form of a declaration by Joseph Gagliardi, the President of J & J Sports Productions, Inc., and an attached rate card for the fight in question, establishing that defendants would have been required to pay $2,200 for a proper sublicensing agreement.  (Decl. of Joseph Gagliardi, Exhibit 2, ECF No. 15, at 17); see J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605 at *5 (E.D. Cal. Dec. 12, 2011) (calculating damages for the tort of conversion based upon the amount that defendants would have been required to pay for a proper sublicensing agreement); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065 at *4 (N.D. Cal. Feb. 29, 2010) (same).  Accordingly, the court also recommends that plaintiff be awarded $2,200 in compensatory damages for its conversion claim.[6]

////

---

[6] Damages for conversion are measured by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221 (Cal. App. 2003).

## IV. CONCLUSION

IT IS ORDERED that within five days after these findings and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on defendants by mail at the address where service of process was effected, or at any more recent address known to plaintiff, and shall file a proof of such service forthwith; and

For the reasons set forth above, IT IS RECOMMENDED that:

1. Plaintiff's February 5, 2014 motion for default judgment against defendants Ruben Contreras Machuca and Silvia Ochoa Gomez both individually and doing business as Centennial Bar and Grill a/k/a Centenial Ranch Sports Bar and Grill (ECF No. 14) be GRANTED;

2. Judgment be entered against defendants in the sum of $3,700, consisting of : $1,500 in statutory damages for violation of 47 U.S.C. § 605, and $2,200 for the tort of conversion; and

3. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

Dated: April 1, 2014

_KENDALL J. NEWMAN_
UNITED STATES MAGISTRATE JUDGE